American Paper Exports, Inc., Plaintiff and Appellee, *v.* Stebbins & Co., Inc., Defendant; Edwin A. Stebbins, Defendant and Appellant.

No. 6489.   Argued December 5, 1934.—Decided February 15, 1935.

*R. Castro Fernández* for appellant.   *Carlos J. Torres Laborde* for appellee.

Mr. Justice Hutchison delivered the opinion of the court.

In an action on account, the American Paper Exports, Inc., obtained a joint and several judgment by default against the defendant corporation and its manager, Edwin E. Steb-

bins, who was alleged to have made himself jointly and severally liable for the obligation originally contracted by the defendant corporation. Later, the case was reopened as to Stebbins and he was permitted to answer.

The answer contained a specific denial of any personal responsibility for the debt of the defendant corporation and a special defense to the effect that if defendant had at any time promised to pay or to guarantee the payment of any debt owed by the defendant corporation there was no consideration for such promise. The district judge in the course of his statement of the case and opinion, said that the special defense was an admission that Stebbins had promised to pay or to guarantee the debt of the defendant corporation. He cited no authority in support of this statement and, although it is assigned as error by appellant, the brief for appellee does not even discuss the question. The affirmative defense negatives the idea of any admission; but aside from this, an admission of the sort involved in the affirmative defense would not relieve plaintiff from the necessity of proving that Stebbins promised to pay the debt of the defendant corporation.

█ Plaintiff's case, as developed at the trial, and the judgment against Stebbins which followed rest mainly upon the erroneous construction of a letter addressed to the plaintiff's treasurer in which Stebbins said:

"Now, as to the account, as stated, everything will be done that is humanly possible to pay up, and as stated in their letter of the 27th, all commissions are to be credited up to Stebbins & Co., Inc., of everything sold up. to and including January 31st, and if it is agreeable for you to give your agency to Stebbins & Catinchi, Inc., it will be agreeable with them for you to withhold the commissions, or such part of them as you think fair for the writer's account, and in th's way as well as otherwise, I will personally guarantee the payment of this account. I can not guarantee it for the account of Stebbins & Catinchi, Inc., for as pointed out in a letter from them, they have no connection with Stebbins & Co., Inc."

A few days later, the American Paper Exports, Inc., in reply to a cable from Stebbins & Catinchi, Inc. said that Stebbins' letter was unsatisfactory and requested that Stebbins & Catinchi, Inc., should not solicit orders for the American Paper Exports, Inc. Notwithstanding this refusal to permit Stebbins & Catinchi to act as agents, the American Paper Exports, Inc., brought this action on Stebbins' alleged promise to pay the debt of Stebbins & Company, Inc. The theory of counsel for appellee is that when Stebbins wrote "in this way as well as otherwise, I will personally guarantee the payment of this account," he meant that he would guarantee such payment even though the agency should not be given to Stebbins & Catinchi, Inc. We find no satisfactory basis for such a construction. "In this way as well as otherwise" modifies the verb "will guarantee." Like the adverb "personally," the words "in this way as well as otherwise," describe the manner in which the writer "will . . . guarantee the payment of this account." The tense is future, not present. Omitting for a moment the words stressed by counsel for appellee, the statement reads: "If it is agreeable for you to give your agency to Stebbins & Catinchi, Inc., it will be agreeable with them for you to withhold the commissions, or such part of them as you think fair for the writer's account, *and* . . . I will personally guarantee the payment of this account." The significance of the "and" can not be ignored. If the specified condition should prove acceptable to the American Paper Exports, Inc., two results, not one, would follow: first, Stebbins & Catinchi, Inc. would consent to the withholding of certain commissions for the account of Stebbins, and, second, Stebbins would personally guarantee the payment of the claim against Stebbins & Co., Inc. The promise personally to guarantee payment in some way other than the withholding of commissions earned by Stebbins & Catinchi, Inc., was conditioned quite as unequivocally upon the giving of an agency to Stebbins & Catinchi, Inc., as was the consent of Stebbins & Catinchi, Inc., to the

withholding of such commissions. If the specified condition should be accepted, Stebbins would guarantee the account in two ways: first, by the withholding of commissions earned by Stebbins & Catinchi, Inc. for the account of Stebbins (which is the way indicated by the words "in this way") and, second, "otherwise," that is to say, in some other way or ways. The use of the words "as well as," or any equivalent thereof in connection with the word "otherwise" or in connection with any of its equivalents, does not alter the outstanding fact that Sebbins was to guarantee payment of the old corporation's debt only on condition that the American Paper Exports, Inc. should make Stebbins & Catinchi, Inc., their agents in Puerto Rico.

If there were any doubt as to the soundness of the foregoing conclusion, a consideration of the situation of the parties and of the circumstances surrounding the case would suffice to dissipate that doubt. Stebbins, after a prolonged and futile struggle as president and manager of Stebbins & Co., Inc., to keep that corporation on its feet as a going concern, had been approached by Catinchi with an offer of financial assistance in a new venture. Together they had then organized another corporation, Stebbins & Catinchi, Inc., and this new corporation was endeavoring to obtain some of the agencies previously handled by Stebbins & Co., Inc. It had already succeeded in obtaining a number of these agencies and in several instances had agreed with creditors of Stebbins & Co., Inc., that the commissions, when earned by the new business, should be applied as payments on the indebtedness of Stebbins & Co., Inc., and the amounts so credited to the account of Stebbins & Co., Inc., by its creditors were charged to Stebbins. Thus, Stebbins was endeavoring, at his own expense, to discharge, little by little, the obligations of Stebbins and Co., Inc., out of the earnings of the new corporation. In the instant case, the new corporation, in order to obtain the agency in question, had agreed that the commissions on the new business should be withheld by the Amer-

ican Paper Exports, Inc., for the account of Stebbins; and with the same end in view as well as out of a desire eventually to pay off the indebtedness of Stebbins & Co., Inc., Stebbins was willing to guarantee payment of the old corporation's debt. Stebbins himself testified that he never had any intention of assuming personal responsibility for the debt of Stebbins & Co., Inc., unless the agency should be first given to Stebbins & Catinchi, Inc. He was under no legal obligation to assume such responsibility and all of the attendant circumstances tend to corroborate the statement made by him while on the stand.

Max Levin, who succeeded Stebbins & Co., Inc., as the local agent of the American Paper Exports, Inc., took the stand as a witness for plaintiff and was asked by counsel for plaintiff why Stebbins had been made a defendant in the action. He said it was because Stebbins, on a certain occasion, had personally guaranteed payment of the account. He then identified the letter from Stebbins to the treasurer of the American Paper Exports, Inc., as the letter referred to in his answer to the question as to why Stebbins had been joined as a defendant. Counsel for defendant then moved to strike the answer as to why Stebbins had been made a defendant on the ground that the letter was the better evidence. The district judge said that the witness might have had some conversation with Stebbins. Asked whether the only guarantee given by Stebbins was the guarantee contained in the letter, witness answered that the letter contained the only guarantee in writing. The cross-examination closed with the following questions and answers:

"Q. Apart from the information acquired by you on this matter from the correspondence, have you any other information in regard to the guarantee offered by Mr. Stebbins to the plaintiff in the present case?

"A. The only information is that he assured me personally, on several occasions that he would himself guarantee the account.

"Q. Did he mention to you the conditions upon which he was going to guarantee the account?

"A. No.

"Q. Do you not remember that he told you that he was going to guarantee the account provided the agency was given to the new corporation formed by him under the name of Stebbins & Catinchi, Inc.?

"A. No."

Stebbins denied that he had even given any verbal guarantee. In the face of this denial, the vague statement that Stebbins on several occasions assured the local representative of the American Paper Exports, Inc. that he "would guarantee the account," without specifying the conditions upon which he "was going" to do so, and that witness did not remember whether Stebbins had specified as such a condition the giving of the agency to Stebbins & Catinchi, Inc., is not enough to sustain the judgment for plaintiff. It was for this reason, no doubt, that the district judge made no specific finding as to this issue and preferred to base his judgment on the alleged written guarantee.

The judgment appealed from must be reversed and the case dismissed without special pronouncement as to costs.

Mr. Justice Wolf dissented.